UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas

AUG 19 2022

Clerk, U.S. District Court
By_____ Deputy Clerk

RONALD J. DAVIS SR., )
)
    Plaintiff. )
)
v. )
)
CRAIG MALES )
c/o Coffeyville Police Department )
1206 W 11th Street )   Civil Action No: **2:22-cv-02330-EFM-GEB**
Coffeyville, Kansas 67337 )
)   **DEMAND FOR JURY TRIAL**
JESSE MOLEY )
c/o Coffeyville Police Department )
1206 W 11th Street )
Coffeyville, Kansas 67337 )
)
TERRANCE GATSON )
Former Coffeyville Police Officer )
1531 Vista Drive )
Bartlesville, Oklahoma 74006 )
)
KWIM BROMLEY )
Chief of Police )
c/o Coffeyville Police Department )
1206 W 11th Street )
Coffeyville, Kansas 67337 )
)
LARRY MARKLE )
Assistant County Attorney )
300 East Main Street )
Independence, Kansas 67301 )
)
LISA MONTGOMERY )
County Attorney )
300 East Main Street )
Independence, Kansas 67301 )
)
DANIEL "HEATH" LAMPSON )
S.E. Kansas Public Defender )
400 N. 14th Street )
Independence, Kansas 67301 )
)
MONTGOMERY COUNTY, KANSAS )

811 West Laurel Street )
Independence, Kansas 67301 )
                                  )

## COMPLAINT

This is a civil rights action seeking redress for the deprivation of fundamental rights guaranteed, *inter alia,* by the United States Constitution and the Kansas Constitution. Plaintiff, Ronald J. Davis Sr., (hereinafter "Plaintiff" or "Mr. Davis") a Black man was subjected to illegal racial profiling, harassment, the unlawful seizure of his person, malicious prosecution, defamation/libel, and intimidation by Defendants all without just cause or reasonable suspicion.

This lawsuit arises from an arrest in February 2017, where Mr. Davis was falsely accused of several misdemeanors and two felonies. The case commenced on February 28, 2017, in the District Court of Montgomery County and was dismissed without prejudice, <u>at the request of the State,</u> on October 6, 2021. [1] The dismissal of the case in 2021, led to the filing of this lawsuit.

## JURISDICTION & VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants are residents of Kansas in which the district is located and a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

---

[1] See the District Court of Montgomery County's Order of Dismissal attached as Exhibit A hereto.

## PARTIES

3. Plaintiff, Ronald J. Davis, SR., resides at 101 Edgewood Drive, Coffeyville, Kansas 67337.

4. Patrol Lieutenant Craig Males ("Lt. Males") is and was at all times relevant to this proceeding an officer of the Coffeyville Police Department ("CPD"). Lt. Males acted at all times relevant herein under Kansas law and in his capacities as agent and employee of the CPD and Montgomery County.

5. Police Officer Jesse Moley ("Officer Moley") is and was at all times relevant to this proceeding an officer of the CPD. Officer Moley acted at all times relevant herein under Kansas law and in his capacities as agent and employee of the CPD and Montgomery County.

6. Former Police Officer Terrance Gatson ("Gatson") was at all times relevant to this proceeding an officer of the CPD. At the time of events pled in this Complaint, Gatson acted at all times relevant herein under Kansas law and in his capacities as agent and employee of the CPD and Montgomery County.

7. Chief of Police Kwim Bromley ("Chief Bromley") is and was at all times relevant to this proceeding an officer of the CPD. Chief Bromley acted at all times relevant herein under Kansas law and in his capacities as agent and employee of the CPD and Montgomery County.

8. Attorney Larry Markle ("Attorney Markle") was at all times relevant to this preceding an Assistant County Attorney with the Montgomery County Attorney's Office. Attorney Markle acted at all times relevant herein in his capacities as an agent and employee of Montgomery County.

9. Attorney Lisa Montgomery ("Attorney Montgomery") is currently the County Attorney with the Montgomery County Attorney's Office. At the time of events pled in this

3

Complaint, Attorney Montgomery was an Assistant County Attorney and acted at all times relevant herein in her capacities as an agent and employee of Montgomery County.

10. Attorney Daniel "Heath" Lampson ("Attorney Lampson") was a Public Defender at the Office of Public Defenders in Independence, Kansas. Attorney Lampson acted at all times relevant herein in his capacities as an agent and employee of the government.

11. Defendant, Montgomery County, is the local government that maintains the CPD the Montgomery County Attorney's Office, and the Office of Public Defenders, which employs all Defendants.

## NATURE OF ACTION

12. This is an action arising under the United States Constitution and 42 U.S.C. § 1983 and Kansas' Bill of Rights.

13. Lt. Males and Officer Moley intentionally and maliciously seized Plaintiff without just cause, used excessive force, and arrested Plaintiff without probable cause which led to false imprisonment and to malicious prosecution.

14. Chief Bromley and Gatson added to the malicious prosecution by using intimidating tactics to punish Plaintiff for exercising his rights to freedom of speech and freedom to petition the government for redress of grievances, in a pretextual attempt to justify the Coffeyville Police Department's improper conduct *post facto*

15. Gatson added to the malicious prosecution and intentional infliction of emotional distress by being verbally abusive towards Plaintiff on numerous occasions and using familial ties to subject Plaintiff to further emotional abuse.

16. Attorney Markle knew Plaintiff personally because Attorney Markle frequented a gym owned and operated by Plaintiff. Attorney Markle, who has been sued by the American Civil

4

Liberties Union for breaking state law and subjecting defendants to a higher probability of jail time,[2] allowed his dislike for Plaintiff to cloud his prosecutorial judgment and tried to pressure Plaintiff into entering a plea deal knowing that the case against Plaintiff was without merit.

17. Attorney Montgomery took over the criminal case prior to Attorney Markle retired. Attorney Montgomery prolonged the case from early 2020 to October 2021 in hopes of intimidating Plaintiff to take a plea deal. After multiple plea deal attempts, and consistent dismissal of meeting with Plaintiff and Plaintiff's repeated refusals to agree to a plea deal, the case was dismissed at her request on October 6, 2021. *See* Ex. A.

18. Attorney Lampson seriously neglected Plaintiff's criminal case by failing to retrieve pertinent exculpatory evidence, failing to take Plaintiff's wishes to not enter a guilty plea by requesting it numerous times, and most importantly, advised Plaintiff that he could not file a complaint for excessive force or for other personal-injury tort claims against the CPD until the close of the underlying criminal proceeding, which was October 6, 2021.

## FACTS

19. Plaintiff currently resides in Coffeyville, Kansas.

20. Plaintiff has a non-profit organization Optimum Prep USA and has been actively involved in helping the youth in Kansas and select locations in the United States.

21. Through Plaintiff's positive active role in the community and various projects, he is known personally by some members of CPD[3] as well as Attorney Markle.

---

[2] Attorney Markle has been sued numerous times by different Defendants for violation of Civil Rights and breaking state laws, but the most notable lawsuit is the one filed by the ACLU in 2018 in Montgomery District Court of Kansas, Case No.: 2018-CV-000147.

[3] *See* portions of August 24, 2017, Preliminary Hearing Transcript attached as Exhibit B hereto. See specifically, Direct Examination of Lt. Males at p. 29 where Lt. Males admits to knowing Plaintiff for "quite some time, through sports, Boys & Girls Club, [and] several activities."

5

22. On February 13, 2017, while Plaintiff was having a family discussion, Lt. Males and Officer Moley entered Plaintiff's grandmother's home. *See* Ex. B at 51.

23. At the time Lt. Males and Officer Moley arrived, it had been reported that "the disturbance was basically over with." *Id.* at 25; 38; 50.

24. Plaintiff's mother told Lt. Males and Officer Moley that there was no reason for officers to be called. *Id.* at 50.

25. Despite the discussion being over, Plaintiff's attempt to leave the house and against Plaintiff's mother's wishes - Lt. Males and Officer Moley stayed in the house. *Id.* at 52.

26. Amid gathering his things to leave the house, Plaintiff was unlawfully seized by Lt. Males and Officer Moley. *Id.* at 53-54; 63.

27. Officer Moley and Lt. Males pushed Plaintiff into a glass window, while Lt. Males threatened to mace Plaintiff in the presence of his mother and two young children. *Id.* at 28; 35.

28. Plaintiff feared for his safety, his life, and the safety of his mother and two children.

29. Without any justifiable cause, reasonable suspicion, or probable cause, Lt. Males and Officer Moley seized and arrested Plaintiff. *Id. at 55.*

30. There was no objective reasonable suspicion to believe that Plaintiff had contraband, was armed or dangerous, or posed a risk to the safety of Lt. Males nor Officer Moley. *See id.*

31. Lt. Males and Officer Moley handcuffed Plaintiff incorrectly and painfully for at least 15 minutes.[4]

---

[4]*See* Ex. B at 21, where Officer Moley admits that Mr. Davis was "improperly cuffed." *See also id.* at 48-49, where Lunette Green, another witness for the State testified that she heard Mr. Davis yelling that his arms hurt because his handcuffs were too tight. *See also id.* at 64, where Eva Green, another witness for the State, testified that Mr. Davis was in pain because the handcuffs were too tight.

32. While Plaintiff was in the police car, Lt. Males and Officer Moley searched for reasons to charge Plaintiff.[5]

33. Due to Lt. Males and Officer Moley's unlawful seizure and arrest, Plaintiff spent a week in jail, causing him to miss a week of work and a doctor's appointment for a shoulder injury, wrist injury, and a torn hamstring. Ex. B at 64.

34. In addition, Officer Moley and Lt. Males knowingly and maliciously lied in court under oath to support the unlawful seizure and arrest of Plaintiff. *See* Ex. B.

35. Despite receiving training on the Watchguard devices, neither Lt. Males nor Officer Moley checked to make sure that they had their Watchguard devices on, which completely contradicts police practices and customs. *See id.* at 22-23; 32-33.

36. Since the devastating events, Plaintiff filed two complaints with the CPD, two complaints with the Interdisciplinary Department, and one complaint with the Kansas Commission on Peace Officers' Standards and Testing, which have all gone without penalty or further review. *See* Ex. C.

37. Since making formal complaints in 2017, Plaintiff has been met with resistance, intimidation tactics by Chief Bromley and other members of the CPD and harassment such as an arrest via Facebook live, being called a racist on tape, and predatory arrests and accusations against family and close friends.

38. Plaintiff's first court date for the charges stemming from his February 2017 arrest was March 30, 2017.

---

[5] Lt. Males claims that Mr. Davis had a warrant for his arrest, however, Lt. Males did not say anything to anyone in the house about it, including Mr. Davis, until Mr. Davis was arrested, and Lt. Males searched for a reason to justify the arrest. *See* Ex. B at 55.

39. On or around March 3, 2017, Plaintiff met with his court-appointed attorney, Attorney Lampson, to review the case.

40. At that meeting, Attorney Lampson was extremely nonchalant and did not communicate to Plaintiff a defense tactic.

41. Plaintiff asked Attorney Lampson to retrieve potential exculpatory evidence that he knew existed and file a motion to dismiss the case, but Attorney Lampson refused.

42. Instead, Attorney Markle, Attorney Montgomery, and Attorney Lampson repeatedly demanded that Plaintiff enter a plea deal, against Plaintiff's wishes.

43. Due to Plaintiff's frustration, when Plaintiff requested information about bringing an excessive force and tort lawsuit against CPD to Attorney Lampson, Attorney Lampson told Plaintiff that he could not sue the CPD until the underlying criminal case was resolved.

44. Plaintiff believed the advice of his attorney, Attorney Lampson, and decided to wait to bring a lawsuit against the CPD because Attorney Lampson told Plaintiff verbatim: "if we lose this case, then you won't be able to sue CPD."

45. After the two years passed, Attorney Lampson, withdrew from the case.

46. Plaintiff's newly appointed attorney, Daniel Reynolds ("Attorney Reynolds), took over the case.

47. During this time Attorney Reynolds filed motions and filed a motion to dismiss.

48. During the pre-trial motion hearing, Attorney Markle attempted to introduce Plaintiff's juvenile records into the case as an intimidation factor for Plaintiff to enter a plea deal, however, Attorney Reynolds filed motions against it.

49. Over the course of years, Attorney Markle and Attorney Montgomery begged Plaintiff to enter a plea deal.

50. In an attempt to intimidate Plaintiff, the case was prolonged for three years until 2020, in which the COVID pandemic started.

51. Due to COVID, the case was prolonged another year, until 2021.

52. Due to lack of evidence and merit, Attorney Montgomery eventually dismissed the case on October 6, 2021. Ex. A.

### i. Request for Equitable Tolling.

53. As this Court is aware, "Equitable tolling is granted sparingly." *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012). And whether to grant equitable tolling is a discretionary matter for the district court. *Id.* According to "long-settled equitable-tolling principles[,] '[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227, 132 S. Ct. 1414, 182 L. Ed. 2d 446 (2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).

54. From the beginning of the case in 2017, Plaintiff has been extremely involved in his case and active in defense.

55. During the criminal case, Plaintiff asked Attorney Lampson, his Public Defender, about filing a complaint against the CPD for his unlawful arrest, their use of excessive force, and for damages relating to the window, however, Attorney Lampson assured Plaintiff that he could not file a complaint against CPD until the criminal case had been resolved.

56. Plaintiff, who is not an attorney, listened to Attorney Lampson's professional advice and quickly filed a lawsuit against CPD on December 21, 2021, two months after his criminal case was dismissed.[6]

57. In addition, per Kansas Statute§ 60-513(b), Kansas' outer limit for personal-injury actions is ten (10) years.

58. Plaintiff wholeheartedly believed at that time, based on the opinions of his attorneys, that he should have waited until after October 6, 2021, to file a lawsuit against CPD and the attorneys involved in his malicious prosecution.

59. Plaintiff respectfully requests this Court to grant his request for equitable tolling for his excessive force and personal-injury tort violations against the officers of the CPD.

## COUNTS

### COUNT I: Violation of 42 U.S.C. § 1983

60. The preceding paragraphs 1 through 59 are incorporated herein by reference.

61. At all times relevant hereto, Plaintiff had the rights to be secure in his person and to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment.

62. At all times relevant hereto, Plaintiff had a right clearly established by the Kansas Bill of Rights to be free from unreasonable seizures.

63. The excessive force and arrest of Plaintiff in his grandmother's home was manifestly unlawful.

---

[6]Plaintiff's case 2:21-cv-02601-HLT-TJJ was dismissed without prejudice on June 22, 2022, due to procedural issues.

64. Officer Moley and Lt. Males had no reasonable suspicion or probable cause to enter Plaintiff's home and arrest him.

65. Plaintiff was not making any threats or caused the Officers to feel threatened in any way, Plaintiff was only trying to gather his things to leave the house for a doctor's appointment. *See* Ex. B at 48, 54-55.

66. Moreover, Officer Moley admits that Plaintiff did not make any threats towards him. *Id.* at 21.

67. In addition, Plaintiff's handcuffs were so tight, that the Officer Moley had to loosen them. *See id.*

68. Chief Bromley was aware of this blatant violation of Plaintiff's rights but did not intervene. Instead, Chief Bromley along with Gatson, Lt. Males and Officer Moley escalated the matter through blatant harassment and intimidation.

69. Plaintiff suffered economic damages (i.e., damage to his grandmother's glass window that he had to pay to fix), damages to his career due to missed days of work, and intentional infliction of emotional distress.

**COUNT II: Malicious Prosecution**

70. The preceding paragraphs 1 through 69 are incorporated herein by reference.

71. To state a claim for malicious prosecution, Plaintiff must allege sufficient facts from which the following may be plausibly inferred: (1) the defendant[s] caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkens v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

72. Defendants, Lt. Males and Officer Moley caused the continued confinement and prosecution of Plaintiff by lying under oath regarding circumstances leading to Plaintiff's arrest. *See* Ex. B.

73. Defendants, Attorney Markle and Attorney Montgomery caused the continued prosecution of Plaintiff by prolonging the case for four (4) years, despite having a case without merit.

74. Defendant, Attorney Lampson caused the continued prosecution of Plaintiff by severely neglecting Plaintiff's case by refusing to retrieve exculpatory evidence and refusing to file a motion to dismiss.

75. The original criminal charges against Plaintiff were dismissed at the request of Attorney Montgomery in October 2021. Ex. A.

76. Officer Moley and Lt. Males did not have any probable cause, reasonable suspicion, or lawful justification to enter Plaintiff's home, use excessive force, or arrest Plaintiff because "the disturbance was basically over with." Ex. B at 25; 38; 50, 52-54.

77. The malicious prosecution endured by Plaintiff has led to harassment and defamation, libel and slander by Chief Bromley and other members of the CPD, causing Plaintiff to lose clients due to tainted background checks, lose money due to his inability to continue to work with higher learning institutions, churches, city municipalities and private companies due to the tainted background profile, miss time with his two young children that he has sole legal custody for, and irreprehensible emotional harm.

**COUNT III: Violation of 42 U.S.C. § 1983**

78. The preceding paragraphs 1 through 77 are incorporated herein by reference.

79. A county may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for unlawful actions of its employees. *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978)).

80. To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *Myers v. Oklahoma County Bd. of County Comm'rs,* 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell,* 436 U.S. at 695).

81. In Montgomery County there is a pattern of Coffeyville Police Officers lying to justify unlawful arrests, neglecting to inform civilians of their Miranda rights, declining to use their Watchguard devices, and having implicit bias that permeates the way they police communities of color and lower income communities.

82. In addition, there is also a pattern of Montgomery County Assistant Attorneys failure to comply with Kansas law and subjecting defendants to a higher probability of jail time.

83. Even though Officer Moley claimed there was a disturbance in Plaintiff's house, eventually leading to his arrest, he testified under oath that he did not get any written statements from any of the people involved, thereby breaking police practices and customs. *See* Ex. B at 14.

84. Officer Moley testified that he feared for his life because he was pushed through a paned glass window causing it to break but testified that he was not injured in any way, nor did he receive any cuts. *See* Ex. B at 10.

85. Moreover, and perhaps most importantly, Officer Moley and Lt. Males did not follow police practices and customs when they failed to use their Watchguard mics during the interaction. Ex. B at 22-23; 32-33.

86. Officer Moley testified under oath that he hit the button when he first arrived to the house, however, his mic *conveniently* did not turn on. *See id.*

87. Lt. Males testified under oath that although he turned on his Watchguard video device when he realized he would enter the home, his Watchguard device also conveniently did not operate at the time. Ex. B at 32.

88. Lt. Males testified under oath that he did not take any official statements, just spoke with Plaintiff's mother, nor did he take any photos of the scene. *See* Ex. B at 31; 36.

89. The failure to effectively train police officers to properly use their Watchguard devices caused the constitutional violations and injuries complained of herein.

90. In addition, the failure to have a proper protocol in place to make official complaints against the CPD has enabled egregious conduct and allowed CPD to continue to abuse their power, without fear of being held accountable for their actions.

### COUNT IV: Intentional Infliction of Emotional Distress

91. The preceding paragraphs 1 through 90 are incorporated herein by reference.

92. All Defendants acted intentionally by subjecting Plaintiff to harassment, excessive force, unlawful police practices, and intimidating tactics that were extreme and outrageous.

93. The actions of Defendants caused Plaintiff to suffer emotional distress due to losing money, losing clients, and starting therapy with his children due to the violence they witnessed.

94. All Defendants acted with malice when they lied in court to justify Plaintiff's arrest.

### COUNT V: Defamation, Libel, and Slander

95. The preceding paragraphs 1 through 94 are incorporated herein by reference.

96. In Coffeyville, Kansas there is a social media page and local newspaper called "Mug Shot Monday" that is ran and controlled by the CPD.

97. "Mug Shot Monday" is a public platform that the CPD uses to inform the local community of unlawful acts.

98. Through the actions of Defendants Lt. Males, Officer Moley, Chief Bromley and Gatson, Plaintiff's mugshot was featured in "Mug Shot Monday" to embarrass, stigmatize, and further harass him.

99. Plaintiff's mugshot being featured in "Mug Shot Monday" caused him to lose valuable networking opportunities, lose business opportunities, and ultimately money.

### COUNT VI: Child Endangerment

100. The preceding paragraphs 1 through 99 are incorporated herein by reference.

101. During the seizure of Plaintiff by Lt. Males and Officer Moley, Plaintiff's two young children were in the room.

102. Plaintiff's children were under the age of 18 years of age.

103. Officer Moley and Lt. Males pushed Plaintiff into a glass window, while Lt. Males threatened to mace Plaintiff in the presence of his mother and two young children.

104. Lt. Males and Officer Moley violated Kansas Statute §21-5601 when they used excessive force in front of Plaintiff's children, placing them in a situation where their life, body, and health could have been endangered.

### COUNT VII: Interference with the Judicial Process

105. The preceding paragraphs 1 through 104 are incorporated herein by reference.

106. Lt. Males and Officer Moley violated Kansas Statute §21-5905 when they provided false information to Prosecutors, Attorney Markle and Attorney Montgomery with the intent to improperly influence Plaintiff's convictions.

107. Attorney Markle and Attorney Montgomery violated Kansas Statute §21-5905 when they provided false information to the Court in an attempt to convict Plaintiff of his charges.

108. In addition, Attorney Markle and Attorney Montgomery interfered with the judicial process when they failed to acknowledge Plaintiff's request to get pertinent discovery regarding the video of his arrest when he arrived at the jailhouse. Plaintiff specifically requested the video to show that had he been "unruly" like the officers claimed, they would have put him in a restraint chair.

### COUNT VIII: Ineffective Counsel

109. The preceding paragraphs 1 through 108 are incorporated herein by reference.

110. When Attorney Lampson and Plaintiff met for the first time, Attorney Lampson was extremely nonchalant and did not communicate to Plaintiff a defense tactic.

111. Plaintiff asked Attorney Lampson to retrieve potential exculpatory evidence that he knew existed and file a motion to dismiss the case, but Attorney Lampson refused.

112. Instead, Attorney Lampson repeatedly demanded that Plaintiff enter a plea deal, against Plaintiff's wishes.

113. Attorney Lampson's performance based on the totality of the circumstances was deficient and fell below the standard of reasonableness.

114. Due to Attorney Lampson's performance, Plaintiff endured a longer trial process, which caused him money, missed days of work, emotional distress, and anxiety.

### COUNT IX: Tampering with Evidence.

115. The preceding paragraphs 1 through 114 are incorporated herein by reference.

116. Lt. Males and Officer Moley intentionally interfered with the investigation by failing to ensure that their Watchguard devices were on.

117. By not having their Watchguard devices on, this convenient "error" allowed Lt. Males and Officer Moley to state their erroneous version of events instead of having an objective device for the Court to listen to.

118. By failing to have their Watchguard devices on, Lt. Males and Officer Moley prolonged the Court process and interfered with the judicial process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ronald J. Davis, SR., prays for judgment as follows:

A. An award of compensatory damages against all Defendants in an amount of $12.3 million or an amount to be determined at trial,

B. An award of punitive damages against Defendants in an amount of $12.3 million or an amount to be determined at trial,

C. Appropriate injunctive relief, including the implementation of training protocols to prevent and effectively discipline the conduct complained of herein, and

D. Any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury as to all issues in this case.

Date: August 19, 2022

Respectfully submitted,

Ronald J. Davis, Sr.
101 Edgewood Drive
Coffeyville, Kansas 67337
Phone Numbers: 337-754-6341
Email Address: rondavis.de@outlook.com

*Pro Se*

---------------------------------
City    State    Zip Code

---------------------------------
Telephone Number

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates { ☐ Wichita, ☒ Kansas City, or ☐ Topeka }, Kansas as the
(Select One)
location for the trial in this matter.

_____
Signature of Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury { ☒ Yes or ☐ No }
(Select One)

_____
Signature of Plaintiff

Dated: 8/19/22
(Rev. 10/15)